Diana Rhodes, #5-2734
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.634.4444
Facsimile: 307.220-0280

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 23 2011
9 / 5 a m
Stephan Harris, Clerk
Cheyenne

## STATE OF WYOMING
### THIRD JUDICIAL DISTRICT COURT
### SWEETWATER COUNTY

| | |
|---|---|
| **WILLIAM C. WITT, Individually, by SUSAN FEINMAN, appointed Personal Representative of the Estate of THERESA JO WITT, Deceased,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**KINDRED HEALTHCARE SERVICES, INC, KINDRED NURSING CENTERS WEST, LLC, KINDRED REHAB SERVICES, INC., d/b/a/ KINDRED NURSING AND REHABILITATION CENTER-SAGE VIEW, and d/b/a/ SAGE VIEW CARE CENTER; the BOARD OF DIRECTORS, KINDRED NURSING CENTERS WEST, LLC, the BOARD OF DIRECTORS,KINDRED HEALTHCARE SERVICES, INC., the BOARD OF DIRECTORS, KINDRED REHAB SERVICES, INC., the BOARD OF DIRECTORS, KINDRED NURSING AND REHABILITATION CENTER-SAGE VIEW, the BOARD OF DIRECTORS, SAGE VIEW CARE CENTER, and JOHN DOE MANAGEMENT COMPANY,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**11CV289**

**Civil Action No.:** _C-11-599-R_

FILED
DISTRICT COURT
THIRD JUDICIAL DISTRICT
SWEETWATER COUNTY WY

JUL 14 2011

DONNA LEE BOBAK
CLERK OF COURT
BY_____
DEPUTY CLERK

## COMPLAINT

Plaintiff, William C. Witt, for claims for relief as a survival action against the Defendants, and Susan Feinman, Esq, as the appointed Personal Representative of the Estate of Theresa Jo Witt, deceased, by and through counsel, Diana Rhodes, Rhodes Law Firm, LLC, state and allege upon information and belief as follows:

Exhibit A

1. At all times relevant to the facts alleged in this Complaint, decedent, was a resident of Sweetwater County, Rock Springs, Wyoming.

2. Theresa Jo Witt was a resident of Sage View Care Center [hereinafter "SVCC"] , and suffered injuries while a resident of SVCC.

3. Plaintiff William C. Witt is the widower of Theresa Jo Witt. William C. Witt is a resident of Fremont County, Wyoming.

4. Susan Feinman is the appointed Personal Representative of the Estate of Theresa Jo Witt, deceased, pursuant to an Order of the Ninth Judicial District Court, Fremont County, Wyoming, dated July 8, 2011, under probate number 11185, and Letters of Administration issued therein, attached as **Exhibits 1 and 2**. She brings this negligence action in her official capacity on behalf of all participating beneficiaries of Theresa Jo Witt, deceased, pursuant to Wyo. Stat. Ann §§1-4-101. The decedent was, and her probate estate and the Personal Representative of her probate estate are, Wyoming citizens.

5. Plaintiffs are informed and believe, and thereon allege, that defendant KINDRED NURSING CENTERS WEST, LLC (hereinafter referred to as "Kindred West") is a limited liability corporation formed and existing under the laws of the State of Delaware, with its principal place of business in the State of Kentucky.

6. Plaintiffs are informed and believe, and thereon allege, that defendant KINDRED HEALTHCARE SERVICES, INC. (hereinafter referred to as "Kindred Healthcare") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business in the State of Kentucky.

7. Plaintiffs are informed and believe, and thereon allege, that defendant KINDRED REHAB SERVICES, INC. (hereinafter referred to as "Kindred Rehab") is a corporation formed

and existing under the laws of the State of Delaware, with its principal place of business in the State of Kentucky.

8. Defendant KINDRED NURSING AND REHABILITATION-SAGE VIEW, is a trade name of KINDRED WEST, KINDRED HEALTHCARE, and KINDRED REHAB, each a foreign business, with the principal place of business for each in Kentucky.

9. Defendant SAGE VIEW CARE CENTER, is a trade name of KINDRED WEST, KINDRED HEALTHCARE, and KINDRED REHAB, each a foreign business, with the principal place of business for each in Kentucky.

10. At all relevant times Defendant KINDRED NURSING CENTERS WEST, LLC, KINDRED HEALTHCARE SERVICES, INC., and KINDRED REHAB SERVICES, INC., owned, operated or managed a nursing home facility in Rock Springs, Sweetwater County, Wyoming, under the business style of "Sage View Care Center."

11. Defendant JOHN DOE MANAGEMENT COMPANY, is a business and may have had oversight and management responsibilities over the Sage View Care Center facility.

12. Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned, each of the defendants was the agent, partner, joint venturer, aider and abetter, alter ego, and/or employee of each of the remaining defendants, and was acting within the course and scope of such agency, partnership, joint venture, and/or employment or in the capacity of an aider and abetter or alter ego.

13. The events giving rise to this action occurred in Sweetwater County, Wyoming.

14. The amount in controversy in this action, exclusive of costs and interest, exceeds seventy-five thousand dollars ($75,000).

15. A Notice of Claim was properly executed to the Medical Review Panel of the State of Wyoming, pursuant to Wyo. Stat. § 9-2-1519. **Exhibit 3.** Defendant Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and d/b/a failed to file an answer with the Medical Review Panel, and the Order of Dismissal was entered by the Medical Review Panel on June 17, 2011, attached as **Exhibit 4.** Pursuant to the Medical Review Panel Act, the Order of Dismissal provided Plaintiff with the availability of legal action, and this Court has jurisdiction.

16. Jurisdiction and venue are proper in this Court.

17. At all relevant times Plaintiff's decedent Theresa Jo Witt was a resident of the Defendants' nursing home operated under the business style of "Sage View Care Center."

18. At all times material to this action, Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc. were engaged in the business of for-profit custodial care of elderly and infirm nursing home residents and were the parent corporations and alter ego of Sage View Care Center [hereinafter SVCC]. As a consequence, Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc., are responsible for any liability and damages that flow from the misconduct of the other defendants as well as being directly liable for its own independent misconduct. Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc., through its employees and officers, as well as its subsidiary corporations including Defendant Kindred Nursing and Rehabilitation Center-Sage View, and Sage View Care Center, controlled the operation, planning, management, and quality control of the nursing facility.

19. Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc., controlled the operation, planning, management, and quality control of the nursing home facility in which Theresa Jo Witt was a resident. This includes, but is not limited

to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

20. John Doe Management Company, as an agent of Defendants Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc., may have controlled the operation, planning, management and quality control of the nursing home facility in which Theresa Jo Witt was a resident. This includes, but is not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

21. Defendants, by holding themselves out as providers and administrators of such skilled services to the public, were at all times relevant hereto responsible for providing high quality nursing, attendant care and rehabilitative services to their patients consistent with their health and safety requirement and needs for protection and with state and federal Medicaid nursing home statutes and regulations, as well as the common law standards of due care for nursing, rehabilitative and attendant care.

22. Defendants are sued both directly and vicariously. They are sued on theories of principal-agent, respondent superior and vicarious liability for the actions and omissions of their employees and agents who were involved in the hereafter complained of series of negligently neglectful and careless incidents.

23. At all times relevant hereto aides, orderlies, nurses, attendants and other nursing home staff of Defendants who failed to provide or secure safe and appropriate nursing and other care including necessary protective care, supervision, monitoring, and working and properly placed or located warning systems and devices, health needs, safety, adequate risk assessments, evaluations, diagnoses and rehabilitative services and other treatments to Theresa Jo Witt were acting within the scope and course of their employment and/or agency with these Defendants.

24. Defendants are also sued directly for their negligent supervision of staff, for inadequate and negligent staffing, for inadequate staff training with respect to the monitoring, supervision, hands-on or standby assistance, safety, and protection for vulnerable patients such as the decedent, and for their failure to develop, implement, modify or otherwise assure appropriate individual care plans, policies and procedures necessary for the health, care, dignity, protection and safety of patients such as Theresa Jo Witt, all of which actions and omissions have now resulted in the injuries of Theresa Jo Witt as complained of herein.

25. The Defendants Kindred Nursing Centers West, LLC, Kindred Healthcare Services, Inc., and Kindred Rehab Services, Inc., [hereinafter collectively referred to as "Defendants Kindred"], owed to Theresa Jo Witt and the other residents a fiduciary duty to use their best efforts and to provide adequate resources to SVCC so that Theresa Jo Witt and the other residents could be adequately cared for. Theresa Jo Witt, like the other residents of Defendant Kindred's SVCC, was frail and dependent upon SVCC to care for her needs.

26. Defendants Kindred owed to Plaintiff's decedent a nondelegable duty to provide reasonable and appropriate nursing and nursing home care.

27. During Theresa Jo Witt's residency at the subject facility defendants KINDRED NURSING CENTERS WEST, LLC, KINDRED HEALTHCARE SERVICES, INC., and

KINDRED REHAB SERVICES, INC.,, and JOHN DOE MANAGEMENT COMPANY, and the BOARD OF DIRECTORS OF EACH RESPECTIVE COMPANY, and each of them, had a duty, under applicable federal and state laws (which were designed for the protection and benefit of residents such as Theresa Jo Witt) to provide for, and to protect, Theresa Jo Witt's health and welfare. Defendants, and each of them, also had a common law duty to provide for the health and welfare of Theresa Jo Witt. Defendants had, among other duties, the duty with respect to Theresa Jo Witt's health and welfare to:

    a. Follow, implement, and adhere to all physician orders.

    b. Protect Theresa Jo Witt from sustaining injuries to her person;

    c. Monitor and accurately record Theresa Jo Witt's condition, and notify the attending physician and family member of any meaningful change in her condition;

    d. Note and properly react to emergent conditions, and timely transfer Theresa Jo Witt to an acute care facility or otherwise appropriately act when the conditions so indicated;

    e. Establish and implement a patient care plan for Theresa Jo Witt based upon, and including, an ongoing process of identifying her health care needs and making sure that such needs were timely met;

    f. Accurately monitor and provide for Theresa Jo Witt's health, comfort, and safety;

    g. Maintain accurate records of Theresa Jo Witt's health, comfort and safety;

    h. Attend to and maintain Theresa Jo Witt's personal hygiene;

    i. Properly and safely provide for Theresa Jo Witt's nutritional and hydration requirements;

j.   Ensure that Theresa Jo Witt received appropriate nutrition, liquids, supplements, and medicines required to maintain and improve her health;

k.   Provide Theresa Jo Witt with appropriate medical and nursing care;

l.   Maintain trained, qualified, and licensed nursing and other staffing at levels adequate to meet Theresa Jo Witt's needs;

m.   Provide sufficient supervision to Theresa Jo Witt, a vulnerable resident, to ensure her safety, and;

n.   Treat Theresa Jo Witt with dignity and respect, and without abuse.

28. The continuing pattern of misconduct engaged in by said defendants, and each of them, as alleged above, manifested itself in the following specific ways with respect to Theresa Jo Witt by failing or refusing to timely investigate and document Theresa Jo Witt's injuries and medical declines, and by failing or refusing to notify Theresa Jo Witt's attending physician, family members, and acute-care personnel of such injuries and conditions.

29. Plaintiff's injuries were proximately caused by the negligence and other misconduct of the Defendants Kindred, in the following particulars:

a.   Failure to provide sufficient staff and personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Sage View Care Center."

b.   Failure to provide proper and appropriate training for personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Sage View Care Center."

    c.     Failure to provide proper and appropriate supervision and monitoring of personnel who attend to the reasonable needs of the residents of its nursing home operated under the business style of "Sage View Care Center."

    d.     Failure to maintain and protect the physical safety of its residents, including Plaintiffs' decedent.

    e.     Failure to follow physicians' orders.

    f.     Failure to progressively care plan where conditions change.

    g.     Failure to protect frail, vulnerable persons.

    h.     Failure to keep residents safe and free from avoidable accidents.

    i.     Failure to properly and appropriately manage monies.

    j.     Failure to timely respond to changing condition of a patient and failure to notify physician of change in condition of Plaintiff's decedent.

    k.     Failure to supervise its management, including but not limited to, the Administrator and Director of Nursing.

29.    As a result of said defendants' continuing pattern of conduct, as alleged above, Theresa Jo Witt suffered the following damages for which plaintiff is seeking compensation:

    a.     Severe personal injuries, including, but not limited to, Stage III-IV decubitus ulcers[1] on multiple areas of her body, including but not limited to both buttocks, coccyx, right ankle, left shoulder, right and left hip, urinary tract infections, wound infections, bleeding from wounds, sepsis, anxiety, injuries from falls, malnourishment with failure to thrive,

---

[1] Decubitus ulcers, also known as "pressure sores" or "bedsores," develop from pressure on the skin, such as when an immobile individual lies in bed for long periods; they can be avoided by repositioning the individual every couple of hours. Risk for decubitus ulcers is increased by lack of basic hygiene, prolonged contact with urine or feces, failure to keep the affected area clean, and nutritional compromise.

contractures of the extremities, severe pain, as well as mental and emotional distress, all to her damage in a sum that will be proven at trial;

        b.     Medical expenses, according to proof at trial, and

        c.     General and special damages in an amount that will be proven at trial.

## STATEMENT OF FACTS

30. Plaintiff incorporates paragraphs 1 – 29 and makes the same a part hereof as if fully set forth herein.

27. On January 20, 2007, Theresa Jo Witt became a resident of Defendants' Sage View Care Center nursing home for the admission which continued through April 13, 2009.

25. At the time of her admission to SVCC on January 20, 2007, and subsequently thereafter, Theresa Jo Witt was assessed as a risk for falls and decubitus ulcers.

26. Plaintiff's decedent was transferred on April 13, 2009 to Help for Health Hospice in Riverton, Wyoming, after a series of negligent acts and omissions allowed her to deteriorate physically, including but not limited to, multiple pressure ulcers about her body, malnourishment, contractures of her extremities, dehydration, and for other injuries between 1/20/07 and 4/13/09.

27. Plaintiff's decedent died on May 31, 2009. Her Death Certificate lists multiple sclerosis as the causative contributing factor in her death.

28. At the time of her admission to SVCC in January, 2007, and subsequently thereafter, Theresa Jo Witt was completely dependent on SVCC for 24-hour nursing care and close bedside supervision for care and treatment of multiple sclerosis, seizures, depression, anxiety, and hypertension.

29. At the time of her admission to SVCC in January 2007 and subsequently thereafter, Theresa Jo Witt was noted to have personality disorders due to her multiple sclerosis, as demonstrated by behavioral issues.

30. At the time of her admission to SVCC on January 2007, and subsequently thereafter, Theresa Jo Witt was a vulnerable adult who relied on the staff employed by Defendants for assistance with basic activities of daily living.

31. According to the medical records, Plaintiff's decedent was at high risk for falls.

32. According to the medical records, Plaintiff's decedent was at moderate risk for pressure sores (decubitus ulcers).

33. According to the medical records, Plaintiff's decedent was dependent on SVCC for her activities of daily living, including repositioning of her body to prevent decubitus ulcers, and for her nourishment and fluid intake.

34. According to the medical records, Plaintiff's decedent suffered from thirteen (13) falls during the period from January 20, 2007 until her discharge on April 13, 2009.

35. As a result of her falls, Plaintiff's decedent suffered injuries to her head, left arm, and multiple bruises and skin tears.

36. According to the medical records, the Plaintiff's decedent suffered multiple repeated and chronic pressure sores, including but not limited to, Stage IV pressure sore to her coccyx, multiple Stage II-IV pressure sore wounds to the sacrum and coccyx, Stage IV pressure sore of her right buttock, Stage IV pressure sore of her left buttock, Stage III pressure sore on right scapula, Stage III-IV pressure sores in the pelvic (hip) region, including a Stage IV wound of the right iliac region, Stage IV pressure sore of the left hip, Stage II pressure sore of the left knee, and pressure sore to the right ankle.

37. According to the medical records, Ms. Witt weighed 141.4 lbs. on admission. and on discharge she weighed  82 lbs.

38. Defendants failed to update a care plan after they knew Ms. Witt had a change; in condition.

39. According to the medical records, Ms. Witt suffered from ten (10) urinary tract infections.  Plaintiffs have reason to believe that Ms. Witt may have suffered from additional urinary tract infection that is difficult to ascertain due to the lack of proper record keeping.

40. Defendants failed to provide and follow a proper care plan.

41. Defendants failed to do proper nursing assessments.

42. Defendants failed to properly document assessments, care given, response to care given, and general nursing care documentation required for proper care.

43. According to the medical records, Defendants failed to notify the physician of Plaintiff's decedent's needs and changes in condition.

44. Defendants failed to notify and/or consult with the attending physician and/or dietician concerning the poor nutrition intake of Plaintiff's decedent.

45. Defendants failed to have a properly trained dietician to consult concerning the poor nutrition intake of Plaintiff's decedent.

46. According to the medical records, Plaintiff's decedent did not consistently or routinely receive hygiene care, proper nutrition, or proper hydration.

47. Defendants failed to follow proper protocol to prevent pressure sores on a resident at moderate risk for pressure sores.

48. Defendant failed to follow proper protocol to treat pressure sores on a resident at moderate risk for pressure sores.

49. Defendants failed to perform pain assessments and follow-up assessments before and after administering narcotic pain medications to Plaintiff's decedent.

50. At all relevant times, Defendants Kindred held a fiduciary position of trust toward Plaintiff's decedent and toward her family, and owed to her the highest duties of good care, adequate staffing, proper physical protection, candor and truthfulness.

51. Defendants Kindred breached and violated its duties toward Plaintiff's decedent, and toward her family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain and with the further objective of concealing its own wrongdoing.

52. The negligence, inattention, and misconduct of Defendants Kindred were committed as part of a pattern of wrongdoing on the part of the corporate Defendant.

53. The Plaintiff's decedent was injured and damaged as a result of the misconduct, fraud, and misrepresentation of Defendants Kindred.

54. At all relevant times, Defendant John Doe Management Company had a duty to properly manage the facility of Sage View Care Center in all manners as it relates to the care treatment of the frail, vulnerable population of residents assigned to their care.

55. Defendant John Doe Management Company breached and violated its duties toward Plaintiff's Decedent and toward her family, and did so with knowledge and forethought and purpose.

56. The negligence, inattention, and misconduct of Defendant John Doe Management Company were committed as part of a pattern of wrongdoing on the part of the management company.

57. The Plaintiff's decedent was injured and damaged as a result of the misconduct, fraud, and misrepresentation of Defendants John Doe Management Company.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

58. Plaintiff incorporates paragraphs 1 – 57 and makes the same a part hereof as if fully set forth herein.

59. Defendants Kindred, for good and sufficient consideration undertook to provide to William Witt services for his wife's occupancy, board, safety, comfort and care adequate to meet her reasonable needs and requests, and such services as to meet the minimum levels of services established by state and federal regulations.

60. Defendants were paid under the terms of the contracts with the State of Wyoming, and with the decedent, and were obligated under the terms of the contract to deliver and provide the highest level of care required for proper care of Plaintiffs' decedent.

61. Defendants' failure to adhere to contract provisions signed with Plaintiff and/or its failure to adhere to regulations set forth herein, constitute breaches of contract.

62.     Defendants failed to provide THERESA WITT with adequate services, failed to meet her reasonable needs and requests, and failed to provide services at levels at even the minimum levels set by law, all in breach of their contract obligations to THERESA WITT and Plaintiff.

63.     As a direct and nature result of said breaches of contract, THERESA WITT was exposed to risk of personal injury from maltreatment, carelessness or neglect, and did, as a result, suffer injury and death while a resident at SVCC.

64.    As a direct and proximate result of Defendants' breaches of contract with THERESA WITT and William Witt, Plaintiff has been injured and is entitled to damages for medical expenses, together with all other damages allowed under applicable Wyoming law.

## SECOND CAUSE OF ACTION
### (Negligence Against All Defendants)

65. Plaintiff incorporates paragraphs 1 – 64 and makes the same a part hereof as if fully set forth herein.

66. Plaintiff William Witt, individually as widower and heir of the deceased, and Susan Feinman, Personal Representative of the Estate, bring this action against Defendants pursuant to the provisions of the W.S. §1-4-101.

67. Defendants at all times pertinent hereto, was a licensed nursing home in the State of Wyoming.

68. Defendant Kindred Health., all times pertinent hereto, was the owner and/or operators of SVCC.

69. Defendant John Doe Management Company, at all times pertinent hereto, may have had responsibilities for the management and operation of Sage View Care Center.

70. Defendants held themselves out to be specialists in the field of nursing care with the expertise to maintain the health and safety of persons unable to care for themselves, such as Theresa Witt.

71. As Theresa Witt was a paying resident of said nursing home, Defendants Kindred., by and through its employees, had contractual and other duties to provide competent nursing and other care to Theresa Witt as required by law and consistent with community standards.

72. Notwithstanding said duties, between January 20, 2007 and April 13, 2009, Theresa Witt fell thirteen (13) times, she had at least ten (10) urinary tract infections, and suffered multiple pressure sores about her body, ranging from Stage II to Stage IV.

73. As a direct and proximate result of her falls, Theresa Witt suffered injuries, including but not limited to, lacerations of the head and body, contusions, and abrasions.

74. As a direct and proximate result of her pressure sores, Theresa Witt suffered multiple and various infections of her body, and severe pain.

75. Defendants negligently failed to properly train its staff in caring for Theresa Witt and others like her who were unable to attend to their own health and safety and were confined to a nursing home.

76. Defendants negligently failed to hire competent staff to care for Theresa Witt and others like her confined to a nursing home.

77. Defendants knowingly and willfully documented material and false statements in the medical record pertaining to the assessments of Theresa Jo Witt.

78. Defendants negligently failed to properly train its staff in keeping accurate nursing care and other treatment notes.

79. Defendants were further negligent and substandard in at least, but not limited to, the following particulars:

        a.  In failing to employ necessary and proper equipment and restraints;

        b.  In failing to progressively care plan where conditions changed;

        c.  In failing to provide adequate staffing;

        d.  In failing to properly train staff regarding oral care and fall prevention;

        e.  In failing to provide proper supervision and monitoring of staff;

f.   In failing to provide accurate and timely assessment;

g.   In failing to prevent decubitus ulcers;

h.   In failing to properly treat decubitus ulcers;

i.   In failing to provide quality of care;

j.   In failing to follow physician's orders;

k.   In repeatedly failing to maintain activities of daily living;

l.   In repeatedly failing to prevent significant weight loss;

m.   In repeatedly failing to prevent flexion contractures;

n.   In repeatedly failing to review care plans after serious falls;

o.   In repeatedly failing to provide a sufficient number of qualified staff;

p.   In failing to prevent infection;

q.   In failing to prevent dehydration;

r.   In failing to provide care with dignity;

s.   In repeatedly failing to perform pain assessments and follow up assessments prior to and after administration of narcotic pain medications;

t.   In repeatedly failing to provide effective administration;

u.   In repeatedly failing to maintain medical records in accordance with professional standards.

v.   In failing to develop and implement an individualized plan of care for falls;

w.   In failing to address changes, improvements, and declines in condition and revise the interventions as appropriate based on THERESA WITT's response, outcomes and needs.

x.   In failing to notify a physician promptly of change in condition;

y.  In failing to protect frail, vulnerable persons;

z.  In failing to provide adequate and timely emergency care for THERESA WITT;

aa. In failing to keep residents safe or free from avoidable accidents;

bb. In failing to properly manage monies;

cc. In failing to supervise its management, including but not limited to, the Administrator and Director of Nursing.

80. The failures of the Defendant SVCC to provide or obtain proper and timely nursing, attendant and other care, supervision, evaluation, monitoring and safety precautions, were breaches of their duties of due care to decedent and a significant causative factor in Ms. Witt's avoidable injuries and death.

81. More specifically, but not limited to, during THERESA WITT's care, SVCC's nurses, staff, employees, and agents negligently monitored and failed to properly care for THERESA WITT despite her risk for falls, and risk for decubitus ulcers.

82. At all times pertinent hereto, THERESA WITT was unable to care for herself and was under the exclusive control and care of Defendants.

83. SVCC breached and violated its duties toward Plaintiff's decedent and toward her family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

84. Ms. Witt and her Estate have been injured and damaged as a result of the misconduct and negligence of SVCC.

85. The direct actions and omissions of the Defendants and their agents and employees acting within the scope of their agency and employment, as set forth above, also constituted a negligent breach of their duties of due care owed to Ms. Witt to provide reasonably appropriate and high

quality nursing, attendant, and other care, supervision and rehabilitative services necessary to meet her needs and assure her known safety needs for close supervision, monitoring, physical safety and protection.

86. As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Plaintiff and Plaintiff's decedent were damaged as previously described in this Complaint, and are entitled to damages as allowed under applicable Wyoming law.

### THIRD CAUSE OF ACTION
### (Negligence *Per Se* against all Defendants)

87. Plaintiff incorporates paragraphs 1 – 84 and makes the same a part hereof as if fully set forth herein.

88. Defendants Kindred and Defendant John Doe Management Company owed a non-delegable fiduciary duty to residents, including THERESA WITT, to provide adequate financial and other resources to care for their residents and to hire, train, and supervise employees so that such employees would deliver care and services to residents in a safe and beneficial manner in order to assist and ensure that the residents attain and maintain the highest practicable level of physical, mental, and psychosocial well-being. The Defendants breached this duty.

89. Defendants Kindred, and John Doe Management Company, at all times relevant hereto failed to provide a sufficient number of trained, experienced and competent personnel; failed to provide appropriate care and supervision and safety for all patients and residents and failed to ensure that their needs were met and that they remained free of accidents, and failed to ensure dignity, all in violation of the regulations for licensing of long-term care health facilities of both the Health Care Financing Administration, U.S. Department of Health and Human Services, 42 C.F.R. Part 483, and the Rules and Regulations for Licensure of Nursing Care Facilities of the

Wyoming Department of Health, pursuant to the Health Facilities act at W.S. §35-2-901 *et seq.*

and the Wyoming Administrative Procedures Act at W.S. §16-3-101 *et seq.*

90. Defendants failed to comply with the requirements of 42 C.F.R. §483.25:

### 42 CFR § 483.25 Quality of Care

Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being, in accordance with the comprehensive assessment and plan of care.

******** 

**§483.25(a)(3):  A resident who is unable to carry out activities of daily living receives the necessary services to maintain good nutrition, grooming, and personal and oral hygiene.**

91. Defendants failed to comply with 42 C.F.R. § 483.30:

### §483.30 Nursing Services

The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care.

92. Defendants failed to comply with 42 C.F.R. §483.15:

### 42 C.F.R. §483.15  Quality of life

§483.15(a) - Dignity The facility must promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality.

93. Defendants failed to comply with 42 C.F.R. §483.20:

### 42. C.F.R. §483.20 Resident Assessment

§483.20 Resident Assessment The facility must conduct initially and periodically a comprehensive, accurate, standardized reproducible assessment of each resident's functional capacity.

§483.20(b) Comprehensive Assessments

§483.20(b)(1) Resident Assessment Instrument. A facility must make a comprehensive assessment of a resident's needs, using the RAI specified by the State. The assessment must include at least the following: ....(iii) Cognitive patterns. (iv) Communication. (v) Vision. (vi) Mood and behavior patterns. (vii) Psychological well-being. (viii) Physical functioning and structural problems. (ix) Continence. ......(xii) Skin Conditions. (xiii) Activity pursuit. (xiv) Medications. (xv) Special treatments and procedures. (xvi) Discharge potential. (xvii) Documentation of summary information regarding the additional assessment performed through the resident assessment protocols. (xviii) Documentation of participation in assessment.

94. Defendants failed to comply with 42 C.F.R. §483.20:

**42. C.F.R. §483.20(j) Penalty for Falsification**

§483.20(j) Penalty for Falsification (1) Under Medicare and Medicaid, an individual who willfully and knowingly-- (i) Certifies a material and false statement in a resident assessment is subject to a civil money penalty of not more than $1,000 for each assessment; or (ii) Causes another individual to certify a material and false statement in a resident assessment is subject to a civil money penalty or not more than $5,000 for each assessment. (2) Clinical disagreement does not constitute a material and false statement

95. Defendants failed to comply with 42 C.F.R. §483.20(d) and §483.20(k):

**42 C.F.R. §483.20(d), and §483.20(k)(3)(1)**

§483.20(d) (A facility must..) use the results of the assessments to develop, review and revise the resident's comprehensive plan of care.

§483.20(k) Comprehensive Care Plans (1) The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.

96. Defendants failed to comply with 42 C.F.R. § 483.20(g):

**42 C.F.R. §483.20(g)** The assessment must accurately reflect the resident's status. A registered nurse must conduct or coordinate each assessment with the appropriate participation of health professionals. A registered nurse must sign, and certify that the assessment is completed.

Under Medicare and Medicaid, an individual who willfully and knowingly certifies a material and false statement in a resident assessment is subject to a civil money penalty of not more than $1,000 for each assessment; or an individual who

willfully and knowingly causes another individual to certify a material and false statement in a resident assessment is subject to a civil money penalty of not more than $5,000 for each assessment. Clinical disagreement does not constitute a material and false statement.

97. Defendants failed to comply with 42 C.F.R. §483.20(k)(3), and 42 C.F.R. §483.20(k)(3)(ii):

### 42 C.F.R. §483.20(k)(3)

§483.20(k)(3): (3) The services provided or arranged by the facility must-- (i) Meet professional standards of quality and; (ii) must be provided by qualified persons in accordance with each resident's written plan of care.

98. Defendants failed to comply with 42 C.F.R. § 483.25 Quality of Care:

### 42 C.F.R. §483.25 Quality of Care

§483.25 Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.

99. Defendants failed to comply with 42 C.F.R. §483.25(a)(1) and (3):

### 42 C.F.R. §483.25(a) Activities of Daily Living

§483.25(a) Activities of Daily Living. Based on the comprehensive assessment of a resident, the facility must ensure that §483.25(a)(1) A resident's abilities in activities of daily living do not diminish unless circumstances of the individual's clinical condition demonstrate that diminution was unavoidable. § 483.25(a)(3) A resident who is unable to carry out activities of daily living receives the necessary services to maintain good nutrition, grooming, and personal and oral hygiene.

100.    Defendants failed to comply with 42 C.F.R. § 483.26(d)(2):

### 42 C.F.R. §483.25(d)(2) Urinary Incontinence

§483.25(d)(2).  A resident who is incontinent of bladder receives appropriate treatment and services to prevent urinary tract infections and to restore as much normal bladder function as possible.

101.   Defendants failed to comply with 42 C.F.R. §483.25(h):

   **42 C.F.R. §483.25(h)  Accidents**

   §483.25(h) The facility must ensure that –

   **42 C.F.R. §483.25(h)(1)** The resident environment remains as free of accident hazards as is possible; and

   **42 C.F.R. §483.25(h)(2)** Each resident receives adequate supervision and assistance devices to prevent accidents.

102.   Defendants failed to comply with 42 C.F.R. §483.25(c):

   **42 C.F.R. §483.25(c)** Pressure Sores. Based on the comprehensive assessment of a resident, the facility must ensure that a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable, and a resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing.

103.   Defendants failed to comply with 42 C.F.R. §483.30(a)(1):

   **42 C.F.R. §483.30(a)(1)** The facility must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans:

   (i)    Licensed nurses;
   (ii)   Other nursing personnel (CNA's)

104.   Defendants failed to comply with 42 C.F.R. §§483.35(b), (c)(1)-(3) and (h)(2):

   **42 C.F.R. §483.35(b)** The facility must employ sufficient support personnel competent to carry out the functions of the dietary services.

105.   Defendants failed to comply with 42 C.F.R.  §483.35(c):

   **42 C.F.R. §483.35(c)** Menus must meet the nutritional needs of residents in accordance with the recommended dietary allowances of the Food and Nutrition Board of the National Research Council, National Academy of Sciences, be prepared in advance, and be followed.

106.    Defendants failed to comply with 42 C.F.R. §483.65:

      **42 C.F.R. §483.65** The facility must establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of disease and infection.

107.    Defendants failed to comply with 42 C.F.R. §483.75 Administration:

      **42 C.F.R. §483.75  Administration**

      §483.75 Administration A facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident.

108.    Defendants failed to comply with 42 C.F.R. §483.75(b):

      **42 C.F.R. §483.75(b) Compliance with Federal, State, and Local Laws and Professional Standards:**

      **§483.75(b)** The facility must operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such a facility.

109.    Defendants failed to comply with 42 C.F.R.  §483.75(l)(1):

      **42 C.F.R. §483.75(l)  Clinical records.** The facility must maintain clinical records on each resident in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible; and systematically organized.

      The clinical records must contain sufficient information to identify the resident; a records of the resident's assessments; the plan of care and services provided; the results of any preadmission screening conducted by the State; and progress notes.

110.    Defendants failed to comply with the requirements of the Wyoming Department of Health Aging Division, **Chapter 11**, including but not limited to:

      **Section 11.  Dietetic Services.** (a) Dietary Supervision. Overall supervisory responsibility for the dietetic service shall be assigned to a full-time qualified dietetic supervisor.

> (1) If the qualified supervisor is not a Registered Dietitian, she/he shall be a graduate of a dietetic technician program approved by the American Dietetic Association or a dietary managers' educational program approved by the Certifying Board for Dietary Managers. Training and experience in food service supervision and nutrition equivalent in content to the approved educational programs are acceptable.

111.    As a direct and proximate result of said violations of regulations, THERESA WITT was exposed to risk of injury from abuse, mistreatment or neglect, and did in fact suffer such injury as a result thereof.

112.    As a direct and proximate result of such negligence, gross negligence, flagrant, willful, wanton, reckless and/or intentional conduct, THERESA WITT suffered injuries that were foreseeable to Defendants.

113.    Defendants' violation of the above stated regulations is negligence *per se.*

114.    As a direct and proximate result of Defendants' negligence *per se,* Plaintiff is entitled to damages for medical expenses, together with all other damages allowed under applicable Wyoming law.

## FOURTH CAUSE OF ACTION
### (Respondeat Superior)

115.    Plaintiff incorporates paragraphs 1 – 108 and makes the same a part hereof as if fully set forth herein.

116.    Based upon contract and agreement, apparent authority and agency, or law, the Defendants are legally or vicariously responsible for the actions of the nurses, staff, employees and agents of Sage View Care Center.

117.    Defendants Kindred are vicariously liable for any and all negligence of their nurses, staff, agents, and employees under the doctrine of Respondeat Superior.

118.     Defendants Kindred were, therefore, negligent in the health care that they rendered to THERESA WITT.

119.     As a result of the negligence of Defendants and their nurses, staff, agents, and employees, Plaintiff William Witt is entitled to damages for medical expenses, together with all other damages allowed applicable Wyoming law.

120.     Plaintiffs seeks recovery for damages caused by the negligence of the Defendants, their agents, servants, and employees, including but not limited to, pecuniary loss, pain and suffering of Theresa Witt, probable future companionship, society and comfort, and reasonable medical expenses of THERESA WITT, and such other damages as are compensable under Wyoming law.

WHEREFORE, Plaintiffs requests that judgment be entered in their favor and against Defendants Kindred, Defendant Sage View Care Center, and Defendant John Doe Management Company, for damages in such amount as the trier of fact determines to be just and proper; for exemplary damages for Defendants' said misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of this action; and for pre-judgment and post-judgment interest, costs, attorney fees, expert witness fees and such other and further relief as this Court deems just and proper in these circumstances.

DATED this 3rd day of July, 2011.

WILLIAM C. WITT, individually, by SUSAN
FEINMAN, appointed Personal Representative of
the Estate of THERESA JO WITT, Deceased,

Diana Rhodes, Esq.   #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com